# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| IRIS CASH | * | |
| Plaintiff, | * | |
| vs. | * | CV 210-175 |
| COUNTY OF GLYNN, GEORGIA, and the Board of County Commissioners; FLORENCE DEES; and THE GLYNN COUNTY OFFICE OF THE TAX COMMISSIONER, | * | |
| Defendants. | * | |

## ORDER

Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 24. For the reasons stated below, Defendants' motion is **GRANTED**.

### BACKGROUND

Iris Cash ("Plaintiff" or "Cash") was employed by the Glynn County Tax Commissioner's Office from October 2001 until October 2008. Cash worked as a part-time tax clerk for the bulk of those years, but briefly held a full-time position in 2006. She voluntarily gave up that position and went back to part-time after a few weeks. The events giving rise to this dispute span

AO 72A
(Rev. 8/82)

approximately a year, and can be broken down into three time periods.

**Period I: September - November 2007**

In September 2007, a full-time position at the Tax Commissioner's office became available. Cash, an African-American woman, and Barbara Warren ("Warren"), a Caucasian woman, both applied for the position. Both applicants appeared to meet the minimum qualifications for the job. Dkt. No. 26, Ex. 9. In terms of experience, Cash had worked at the Tax Commissioner's Office for several years, and Warren had been there less than a year. Id. On the other hand, Warren had several years experience working in car dealerships which "exposed her to the vehicle tax and tag process." Id. Warren was given the job.

Cash felt that the hiring decision was racially-motivated. The Tax Commissioner, Defendant Florence Dees ("Dees"), was the ultimate decision-maker in filling the position. Dees contends that race played no part in her decision and that the decision to award the job to Warren was motivated by answers the applicants provided to interview questions. Soon after the decision was made, Cash requested an explanation for the decision to hire Warren. Dees responded in a written memorandum, stating, "In gathering data on your day to day working habits, I had to rely on both Patsy Bullard, Supervisor

AO 72A
(Rev. 8/82)

and with [sic] Alberta Randolph, Chief Deputy Tax Commissioner. They felt that you did not meet the qualifications. I used their opinions to make my decision." Dkt. No. 26, Ex. 1. Defendants claim that Cash showed several other employees the memorandum and made critical remarks about Dees' decision to hire Warren.

Cash, obviously unsatisfied with Dees' explanation, notified the Glynn County Human Resources Director, Orah Reed ("Reed"), about her suspicions of racial discrimination in a written complaint on November 7, 2007. Dkt. No. 26, Ex. 3. That same day, Dees brought Cash into her office and gave her a second memorandum. The memorandum instructed Cash to stop making "derogatory comments" about the hiring decision or else Cash would "face disciplinary action."[1] Dkt. No. 26, Ex. 4 (hereinafter "Dees Memo Two").

Sometime in late November, Cash apparently was involved in a dispute with a co-worker, Bessie Wiley. Dkt. No. 24, at 4. At the beginning of the workday, Wiley greeted Cash with a "good morning," and Cash ignored the greeting. Wiley then said, "Is that how a Christian is supposed to act?" Cash apparently went to Wiley's supervisor and stated that she did not want Wiley to communicate with her, except about work-related matters. On or

---

[1] There is some dispute about the order of events. Because of the Court's rulings below, any dispute about the order of events in November 2007 is immaterial.

AO 72A
(Rev. 8/82)

around November 27, 2008, Dees spoke to Cash and Wiley about the dispute. It does not appear that any further action was taken.

**Period II: January - February 2008**

Cash's November 7, 2007 letter spurred an investigation by the Glynn County Human Resources Department. The investigation culminated in a report from the investigator that indicated that the Tax Commissioner's Office did not use best practices in hiring decisions, but concluded that there was "no basis for Ms. Cash's allegations of race discrimination." Dkt. No. 26, Ex. 6. That report is dated January 14, 2008. Id. On January 22, 2008, Cash sent another letter to Reed in Human Resources expressing her disagreement with the report's conclusions. Dkt. No. 26, Ex. 7.

On January 23, 2008, Plaintiff was called into Dees' office and reprimanded for improper use of office supplies.[2] Plaintiff sent Reed a letter that same day describing the interaction with Dees. Dkt. No. 26, Ex. 8. Reed responded to Cash's letter on February 29, 2008, and explained that (1) Reed agreed with the results of the Human Resources investigation about the decision to hire Warren over Cash, (2) Cash had exhausted her grievance rights, and (3) Reed had investigated the office supply

---

[2] There is some factual dispute about the motivation and circumstances of the office supply reprimand. However, because of the Court's conclusion regarding the 180 degree filing window, the dispute is immaterial.

reprimand, found it to be based on mistaken assumptions, and that the issue was considered resolved. Dkt. No. 26, Ex. 9.

**Period III: September - October 2008**

Several months later, on September 30, 2008, Cash was given two memoranda by her supervisor, Alberta Randolph ("Randolph"). Dkt. No. 26, Exs. 12, 13. Both documents referred to Cash's purported violation of the proper procedure for submitting employee leave forms. The first document described two events. The first event occurred on March 6, 2008, when Randolph allegedly instructed Cash to refrain from placing employee leave forms on Randolph's desk, and instead to hand the forms directly to one of the supervisors in the office. The second event occurred on September 26, 2008, when Cash violated the same procedure. The second memorandum was essentially the same as the first, but confirmed that Cash was being given a written reprimand and it was Cash's "final warning." Dkt. No. 26, Ex. 13. On October 2, 2008, Randolph provided Cash with two more documents: (1) A "Record of Verbal Counseling," which described the counseling session on March 6, 2008, and (2) "Notice of Pending Discipline" which indicated that Cash would receive a written reprimand for "continuing to place leave notice on desk without speaking with supervisor." Dkt. No. 26, Exs. 16, 17.

Cash claims that the September 30 and October 2 reprimands made her feel like she was being singled out because of her

5

earlier complaints about racial discrimination. In response, Cash drafted two letters: one letter to Reed and one to Randolph. Dkt. No. 26, Exs. 18, 19. The letters were largely the same, describing Cash's view of the leave form reprimands, and explaining that she felt singled out because of her previous racial discrimination complaints. Although the letters were addressed to Reed and Randolph, both letters indicate that Dees and other County officials were intended recipients. In her Complaint and briefing on summary judgment, Cash claimed she "wrote to" Reed and Randolph on Friday, October 3, 2008, but failed to say when she mailed or delivered the letters. Compl. ¶ 25, Pl.'s Resp. 8, 15. Importantly, Dees testified that she was unaware of the existence of these memoranda until after Cash was terminated. Dees Aff. ¶ 11, Dkt. No. 24, Ex. 3.

Later on Friday, October 3, 2008, Cash attended a social event at her church. Cash's sister and Randolph were also present at the event. Cash Dep. 53, Dkt. No. 24, Ex. 7. Some harsh words were exchanged between Cash's sister and Randolph. Randolph testified that she felt that the interchange was "very threatening." Randolph Dep. 59, Dkt. No. 26, Ex. 26. Randolph reported the incident to Dees over the weekend. Id.

On the morning of Monday, October 6, Dees met with Randolph prior to Cash arriving for work. The two discussed their frustrations over Cash, and decided to terminate Cash's

employment that morning. Dees called Cash into her office and told Cash that she would no longer be working for the Tax Commissioner's office. Cash left the office and returned a few minutes later with two memoranda, dated October 3, 2008. Cash's termination was made effective October 9, 2008.

**PROCEDURAL HISTORY AND EVIDENTIARY ISSUES**

Plaintiff filed a charge with the EEOC, claiming discrimination and retaliation, on January 8, 2009. Plaintiff received a right to sue letter from the EEOC on August 24, 2010, and initiated this lawsuit on November 18, 2010. In her Complaint, Cash states four claims for relief: "Count I: Retaliation Claim Pursuant to Title VII of the Civil Rights Act of 1964"; "Count II: Denial of First Amendment Rights Claim Pursuant to 42 U.S.C. § 1983"; "Count III: Deprivation of Property without Due Process Claim Pursuant to 42 U.S.C. § 1983"; "Count IV: Civil Rights Attorney's Fee Awards Act of 1976." Compl. Plaintiff named as Defendants "County of Glynn, Georgia and The Board of County Commissioners; The Tax Commissioner; and Florence Dees." Id.

Defendants moved for summary judgment on Plaintiff's claims. Plaintiff, in recognition of the strength of Defendant' arguments, responded by significantly narrowing the scope of her lawsuit. Pl.'s Resp., Dkt. No. 26. Plaintiff withdrew all claims asserted against Glynn County and the Board of County

Commissioners. Id. Plaintiff further agreed that there is no distinction between claims against "The Tax Commissioner" and "Florence Dees." As such, Plaintiff conceded that the only named Defendant remaining in the suit was Florence Dees as Tax Commissioner. Plaintiff also significantly narrowed the scope of the claims, stating that the only viable claim was one for retaliation under Title VII. Plaintiff argued that there were three possible periods of conduct that could give rise to her retaliation claim: November 2007, January 2008, and October 2008. Id.

Soon after Plaintiff filed her response, Defendants' presented supplemental briefing, arguing that all claims for retaliation arising from conduct that occurred 180 days or more before Plaintiff filed her EEOC complaint were statutorily barred. Dkt. No. 33. Plaintiff filed her EEOC complaint on January 8, 2009 which would prevent claims for retaliation based on conduct before July 12, 2008. Accordingly, Defendants argued that retaliation claims based on conduct during November 2007 and January 2008 were statutorily barred. Plaintiff filed no response to these arguments.

On February 16, 2012, the Court conducted a pretrial conference with the parties. At the conference, Plaintiff acknowledged Defendants' argument regarding the 180 statutory bar and the Court's power to *sua sponte* grant summary judgment

on the time-barred claims under Rule 56. Dkt. No. 41, at 4-5. The Court gave Plaintiff five days to brief the time-bar issue, but Plaintiff failed to provide any additional argument, apparently conceding that any retaliation claims based on the November 2007 and January 2008 conduct were time-barred. Thus, only one claim remained after the pretrial conference: a claim for retaliation asserted against Dees, based on her conduct in October 2008.

During the pretrial conference, the Court discussed the details of the remaining claim. Plaintiff's counsel stated that the evidence supporting a retaliation claim for Cash's termination consisted of (1) "the fact that one of the memoranda was directly addressed to [Dees'] office and was sent three days before the termination decision," and (2) some testimony from Alberta Randolph who speculated that perhaps Cash's sister treated her, Randolph, rudely because the non-Plaintiff sister was angry with the non-decisionmaker Randolph for Cash's treatment nearly a year ago. Dkt. No. 41, 6. Plaintiff's counsel acknowledged that Dees' testified that she was not aware of the October 3rd memoranda, or any other protected conduct, when she terminated Cash on October 6, 2008. Plaintiff's counsel further recognized that Dees' testimony, and Plaintiff's lack of evidence to the contrary, was one of the "toughest hurdles" in the case. Dkt. No. 41, at 6.

Five days after the pretrial conference, Plaintiff filed her "Plaintiff's Supplemental Brief Opposing Defendants' Motion for Summary Judgment." Dkt. No. 34. In that brief, Plaintiff attempted to demonstrate that she engaged in protected conduct in the days preceding October 6, and that she was terminated in retaliation for that conduct. For the first time in the long life of the litigation, Plaintiff submitted two affidavits and two memoranda that, according to Plaintiff, she had forgotten all about until after the pretrial conference. If timely and legitimate, these newly remembered documents might serve to defeat Defendants' Motion for Summary Judgment. The documents were neither timely nor legitimate, as discussed in great detail in the Court's July 20, 2012 order. Dkt. No. 65. As a result, the newly remembered documents were not admissible and cannot be relied on in opposition to Defendant's Motion for Summary Judgment.

## LEGAL STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Collins v. Homestead Corr. Inst., 2011 WL 4584817, at *2 (11th Cir. Oct. 5, 2011) (quoting Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th

Cir. 1990)). Furthermore, only evidence which is admissible at trial may be considered on summary judgment. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011). The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## DISCUSSION

In order to state a *prima facie* case for retaliation under Title VII, an employee must show that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) she can establish a causal link between the protected activity. Brown v. Ala. Dept. of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010). "To demonstrate a causal connection, a plaintiff can show that the decision makers were aware of the protected conduct, and that the protected activity

and the adverse actions were not wholly unrelated." Boyland v. Corrs. Corp. of Am., 390 F. App'x 973, 975 (11th Cir. 2010) (citing Shannon v. BellSouth Tele., Inc., 292 F.3d 712, 716 (11th Cir. 2002). "Causation may be inferred by close temporal proximity between the protected activity and the adverse action by the employer." Id. (citing Thomas v. Cooper Light., Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)). However, "mere temporal proximity, without more, must be 'very close.'" Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007) (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001)). Moreover, "[a] three to four month disparity between statutorily protected expression and the adverse employment action is not enough." Id.

Here, Dees testified that she was unaware of any of Cash's alleged statutorily protected conduct that occurred during October 2008. Dees Aff. ¶ 11, Dkt. No. 24, Ex. 3. Arguably, the most recent statutorily protected conduct Plaintiff can point to is that which occurred in January 2008, over eight months before she was terminated. Because Plaintiff has failed to present any admissible evidence showing that Dees was aware that Plaintiff engaged in statutorily protected conduct in the months leading up to her termination, Plaintiff has failed to demonstrate a causal connection between her termination and statutorily protected conduct. Plaintiff has not presented

evidence supporting one of the essential elements of a *prima facie* case for retaliation under Title VII, and Defendants are entitled to summary judgment on that claim. Further, because Defendants are entitled to summary judgment on the only remaining claim in the lawsuit, Defendants are entitled to final judgment in the matter. So ends one of the most shameful efforts to defeat summary judgment.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED**. The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of Defendants.

**SO ORDERED**, this 24th day of August, 2012.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA